IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MACE LAVAL CAMPBELL,
      Petitioner,

v.                                 Case No. 3:11cv2/WS/MD

SAM CULPEPPER,
      Respondent.
_____

## REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 12) to which petitioner replied (doc. 16).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by Mr. Campbell, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Mr. Campbell is not entitled to relief, and the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

      The petitioner, Mace Laval Campbell, was charged by Amended Information with one count of burglary of an occupied dwelling in case number 2007 CF 000801 in the Circuit Court of Walton, Florida, in violation of Section 810.02(1)(b) and (3)(a),

Florida Statutes (2007) (doc. 12, ex. C, p. 23).[1]  The charge alleged that on October 15, 2007, Mr. Campbell entered Wendell McCaskill's dwelling and committed theft while another person was in the dwelling (ex. C, p. 46).  Mr. Campbell was tried by jury and found guilty on March 14, 2008 (ex. C, p. 61).  On March 17, 2008, the court sentenced him to a term of imprisonment of fifteen years, with 186 days of credit time (ex. C, pp. 88-91).

Mr. Campbell appealed the conviction and sentence (ex. C, p. 66).  His appointed counsel filed an *Anders*[2] brief, asserting he could not make a good faith argument for reversal (ex. I, p. 10).  Mr. Campbell subsequently submitted a *pro se* brief, raising three issues: 1) the trial court erred in denying the defense motion for judgment of acquittal; 2) the verdict was contrary to the law and evidence; and 3) the court was without jurisdiction in sentencing to depart from the lower end of the guidelines (ex. K).  On June 2, 2009, the Florida First District Court of Appeal ("First DCA") *per curium* affirmed the conviction and sentence without written opinion. *Campbell v. State of Florida*, 10 So.3d 634 (Fla. 1st DCA 2009) (Table) (copy at ex. L).

On May 25, 2010, Mr. Campbell filed a *pro se* motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, alleging three claims of ineffective assistance of counsel (ex. O, p. 111).[3]  On August 5, 2010, the Rule 3.850 court denied the motion by written decision (*id.* at 128).  The court also denied Mr. Campbell's motion for rehearing (*id.* at 349).  Mr. Campbell appealed to the First DCA, which *per curiam* affirmed the Rule 3.850 court's denial on November 3, 2010. *Campbell v. State of Florida*, 49 So.3d 1268 (Fla. 1st DCA 2010) (Table) (copy at ex. Q).

---

[1]  Hereafter all references to exhibits will be to doc. 12 unless otherwise noted.

[2]  *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 493 (1967) (counsel appointed for state appeal should advise the court when he finds the appeal to be frivolous and request permission to withdraw).

[3]  The court struck Mr. Campbell's first two post-conviction motions, allowing him to amend (ex. O, p. 1).  He ultimately filed a "Corrected Second Amended Motion for Post Conviction Relief", with supporting memorandum of law and appendix (ex. O, p. 1, 85, 93).

Mr. Campbell's motion for rehearing, rehearing en banc, or written opinion was also denied (exs. P, R).  The Mandate issued on January 4, 2011 (ex. S).

Mr. Campbell filed the instant petition for federal habeas corpus on January 3, 2011 (doc. 1).  Respondent asserts all available procedural bars (doc. 12, p. 6).

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254 provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  Section 2254(d)(2) must be divided into two separate inquiries:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached

---

[4]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring). The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011); *see Knowles v. Mirzayance*, 556 U.S. 111, __, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling. *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010). Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different

result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *see* § 2254(d)(1).  The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  § 2254(d)(1); *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it.  *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011) (holding new evidence introduced in federal habeas court has no bearing on § 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam)); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439.  However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles*, 129 S. Ct. at 1419.  Notably, even a state court's incorrect application of law will not

warrant federal habeas relief unless it is also objectively unreasonable. *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination. *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum). The petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals in *Gill* clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[5] The Eleventh Circuit granted a limited Certificate of Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning." *Id.* at 1286.[6]

---

[5] Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel. *Gill*, 633 F.3d at 1275-1284; *see* U.S. Const. amend. VI. The trial court denied the first motion, concluding that Mr. Gill's waiver of counsel was not knowing and intelligent. *Gill*, 633 F.3d at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation). It also denied the second motion, but it allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy. *Gill*, 633 F.3d at 1284. He was convicted, and the Florida Second District Court of Appeal ("Second DCA") affirmed without opinion the trial court's denial of post-conviction relief. *Id.* at 1284-85. Mr. Gill then filed a petition in federal court, which petition the court denied with prejudice. *Id.* at 1284-85.

[6] The court reviewed Gill's claims that the federal habeas court erred in two respects. First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." 633 F.3d at 1288. Second, Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make." *Id.* Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally"

The court acknowledged the well-settled principle that summary affirmances, such as the Florida Second District Court of Appeal's, are presumed adjudicated on the merits and warrant deference.  *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)).  "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion.  *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784).  Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion."  *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)).  The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning."  *Id* at 1291 (agreeing with the Fifth Circuit court in *Neal*, *supra*).  In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*[7]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]"

---

waived his right to counsel.  *Id.*

[7]  Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive.  *Id.* at 1288.

whether the state court's decision was objectively unreasonable.  *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786*.*  Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion."  *Id.* at 786 (internal quotations omitted).

The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59, 168 L. Ed. 2d 662 (2007); *Jones v. Walker*, 496 F.3d 1216, 1228 (2007) (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  When performing its review under § 2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or denied.  *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010).  The federal court must also bear in mind that state court factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness).  "If this standard is difficult to meet, that is because it was meant to be."  *Harrington*, 131 S. Ct. at 786.

## OTHER CONTROLLING LEGAL PRINCIPLES

**Ineffective assistance of counsel.**

Petitioner contends in his grounds for relief in this court that he was denied his constitutional right to the effective assistance of counsel. The Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To prevail on a claim of ineffective assistance of counsel, the petitioner must prove: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins,* __ U.S. __, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010). Reasonableness of representation does not implicate what is possible, prudent, or even appropriate, but only what is "constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler*, 218 F.3d at 1314. Courts must make "every effort. . .to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g.*, *Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance"). The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately." *See White v. Singletary*, 972

F.2d 1218, 1221 (11th Cir. 1992).  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . .the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S. Ct. at 2067; *see Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005). Petitioner must show a reasonable probability exists that the outcome would have been different.  *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be "applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788.  As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted); *Knowles*,129 S. Ct. at 1420 (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This [inquiry] is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Jones v. Sec'y, Dep't of Corr.*, ___ F.3d ___, 2011 WL 2540573 (11th Cir. Jun. 28, 2011) (quoting *Harrington*, 131 S. Ct. at 785 (2011)). Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d) and *Strickland*, and petitioners only rarely prevail on this ground. *See Rogers*, 13 F.3d at 386.

<u>Exhaustion and Default</u>

A petitioner defaults on an issue unless the petitioner first exhausts available state court remedies so the state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right). *But see* § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365-66, 115 S. Ct. at 888; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (same). This affords the state courts "one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.

"Fair presentation" requires that, in each claim for relief, the petitioner include a reference to a specific federal constitutional guarantee and a statement of the facts that entitle the petitioner to relief.  *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 513, 30 L. Ed. 2d 438 (1971).  To satisfy the exhaustion requirement, the petitioner must present the same facts and claims in state court about which he petitions the federal court.  *Id.*  Appeals to a broad, general constitutional guarantee also fail to present the "substance" of such a claim to the state court.  *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 278, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant. . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)).  A state prisoner's claim is not fairly presented if the state court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material. . .." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  However, when a petitioner squarely raises a federal constitutional claim in state court, the "failure of a state court to mention a federal claim does not mean the claim was not presented to it."  *Dye v. Hofbauer*, 546 U.S. 1, 3, 126 S. Ct. 5, 6-7, 163 L. Ed. 2d 1 (2005).  And, simply labeling the claim "federal" may be sufficient to fairly present the claim.  *Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351 (dictum)*.*

The Eleventh Circuit requires specific reference to the United States Constitution and favors citations to federal cases.  *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us.").  This stricter standard requires the petitioner to differentiate a claim under the United States Constitution from one under a state constitution.  *Id.* at n.5; *McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) ("a habeas applicant [must] do more than scatter some makeshift needles in the

haystack of the state court record") (internal citations omitted)).  If state and federal constitutional law overlap in their applicability to the petitioner's claim, he must raise his issue in terms of the federal right in state court to obtain federal review of the issue.  *Duncan*, 513 U.S. at 366, 115 S. Ct. at 888; *see also Anderson*, 459 U.S. at 7 and n.3, 103 S. Ct. at 278 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2557 and n.1, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  Unless the federal court determines the state court "clearly and expressly" relied on independent and adequate state grounds, the federal court may address the petition.[8]  *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557. However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question.  *Id.* at 735 n.1, 2557 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9, 103 L. Ed. 2d 308 (1989) (federal habeas court need not require a federal claim be presented to a state court if the state court would hold the claim procedurally barred).

---

[8]  The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935 (1991). A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement. *Maples v. Allen*, 586 F.3d 879, 888 (11th Cir. 2009) (*citing* Lee, 534 U.S. at 385-88, 122 S. Ct. at 890-92)).

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, the petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice. *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000). Cause exists when an external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim, prevented petitioner from raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991). To meet the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" because "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.* In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case. *Id.*

**Deference to state court findings of fact**

Federal habeas courts defer to the state court's findings of fact, unless the petitioner shows by clear and convincing evidence that it was unreasonable. *See* 28 U.S.C. § 2254(d)(2); § 2254(e)(1); *Callahan v. Campbell*, 427 F.3d 897, 926 (11th Cir. 2005) ("§ 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2)."); *see also Rutherford v. Crosby*, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record"). Under the AEDPA, the state court does not have to explicitly state its findings of fact. *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11th Cir. 2008). State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim. *Id.* These implicit findings are entitled to deference. *Id.* As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory. *Early*, 537 U.S. at 8, 123 S. Ct. at 365. A summary adjudication with a brief, or total lack of, statement of reasons is still an adjudication on the merits. *Harrington*, 131 S. Ct. at 780, 784; *see Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.").

Under Eleventh Circuit precedent, the habeas court will "'look through' a summary decision to the 'last reasoned decision' on the issue." *McGahee v. Alabama Dep't of Corr.*, 560 F.3d 1252, 1262 n.12 (11th Cir. 2009) (quoting *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1317 (11th Cir. 2006)); *see also Ylst v. Nunnenmaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991) (". . .the *Harris* presumption only applies after habeas court determines 'the relevant

state court decision. . .fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 2559, 115 L. Ed. 2d 640 (1991)).

## PETITIONER'S GROUNDS FOR RELIEF

Mr. Campbell raises three grounds for relief alleging ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights (doc. 1, pp. 5-11). Mr. Campbell presented identical claims in his state motion for post-conviction relief (*id.*, p. 3). The Rule 3.850 prefaced its findings of fact and conclusions of law by identifying the clearly established federal law governing ineffective assistance of counsel claims according to *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

1.  **Ineffective assistance of counsel for misadvice as to direct and collateral consequences of the plea.**

Mr. Campbell contends his counsel misadvised him "in telling [him] to exclude exculpatory testimony that would demonstrate as an invited guest the crime of burglary never occurred[.]" (Doc. 1, p. 2; doc. 12, ex. O, p. 85). Mr. Campbell wanted to testify that on the day of the burglary he and Mr. McCaskill were smoking crack cocaine at Mr. McCaskill's residence (ex O, p. 86). According to Mr. Campbell, he and Mr. McCaskill ran out of crack cocaine and Mr. McCaskill gave him eighty dollars to purchase more (*id.*). He states two boys saw him return to the residence with the crack cocaine (*id.* at 86-87). He believes this fact proves he was an invited guest, thus he did not enter the dwelling by force and he did not commit a burglary (*id.*). He also faults his counsel for failing to question Mr. McCaskill about whether he was using crack cocaine with Mr. Campbell the day of the burglary (*id.* at 87). Mr. Campbell alleges that had his counsel not "<u>strongly advised</u>" him not to testify, "[t]here is a reasonable probability that . . .the jury would have reached a different verdict." (*Id.*) (emphasis in original).

**State Court Decision**

The Rule 3.850 court rejected Mr. Campbell's argument (ex. O, p. 137).  It stated: "Advising a client to testify or not to testify is both a strategy and ultimately a decision that must be made by the client."  (*id.* at 133).  It referenced the trial transcript that showed the trial judge discussed with Mr. Campbell whether he would testify and gave Mr. Campbell the lunch hour to think it over.  "The trial judge even specifically told defendant that the right to testify was his right and that he had an independent right to testify regardless of his trial counsel's advice." (*id.* at 133-34). The Rule 3.850 court cited to record evidence that Mr. Campbell "specifically responded that he was not going to testify *and that it was his decision.*" (*id.* at 134) (emphasis in original).

Furthermore, the court expounded on the strategic choice an attorney must make in deciding whether to advise his client to testify (ex. O, p. 134).  In this case, if Mr. Campbell had testified, the jury would have learned he was a convicted felon and had a prior conviction for a crime of dishonesty (*id.*) (citing trial transcript). Counsel also had to determine the wisdom of alerting the jury that Mr. Campbell had been smoking crack cocaine the day of the burglary, a fact that could be detrimental to his case (*id.*).  And, as a matter of law, even if Mr. Campbell testified he had permission to be in the residence earlier that day, permission can be withdrawn and Mr. Campbell may not have had permission at the time of the burglary (*id.*).

The Rule 3.850 court concluded that the face of the record showed: 1) Mr. Campbell's counsel's advice was reasonably competent under the circumstances; and 2) Mr. Campbell's decision not to testify was his own decision, so Mr. Campbell did not show actual prejudice.  (Ex. O, p. 135).

**Federal Review of State Court Decision**

The Rule 3.850 court's decision is reasonable.  Mr. Campbell showed neither deficient performance nor prejudice under the *Strickland* standard.  First, Mr. Campbell's counsel's strong advice discouraging testifying is within the wide range of reasonable professional assistance under the performance prong of the *Strickland*

test.  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998) (whether attorney's actions were the product of a strategic decision is an issue of fact; whether the decision was reasonable is an issue of law).  The Eleventh Circuit has clearly stated that counsel is not ineffective just because the chosen defense proved unsuccessful.  *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000)  *Provenzano*, 148 F.3d at 1332 (quoting *Strickland*) (counsel's tactical decisions on which defense to pursue are "virtually unchallengeable").  *Cf. Miller v. Anderson*, 255 F.3d 455, 458 (7th Cir. 2001) (the fact that something was a tactical decision does not immunize it from review under *Strickland*).

After all, "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *accord, e.g., Waters*, 46 F.3d at 1522 ("Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.").  The courts should not second-guess counsel's strategy that was not directly prohibited by law nor directly required by law.  *Chandler*, 218 F.3d at 1314 n.14.

More importantly, regardless of Mr. Campbell's counsel's advice, he was informed that the right to testify was his right and not his counsel's.  As Mr. Campbell argues, the record shows he originally intended to testify.  When the court asked his counsel if she was planning to call witnesses, she indicated she intended to call Mr. Campbell (ex. E, p. 144).  Outside the presence of the jury, the court explained in detail the possible consequences of Mr. Campbell's decision:

> THE COURT:      All right.  I need to make you aware - - Obviously, you understand you have the right not to testify?
> THE DEFENDANT:        Yes, sir.

> **THE COURT:       And then, obviously, you have the right to testify?**
> **THE DEFENDANT:       Yes, sir.**
> **THE COURT:       Have you discussed with Ms. DeSpain the advantages and disadvantages of testifying?**
> **THE DEFENDANT:       Yes, sir.**
> **THE COURT:       And do you feel like it's in your best interest to testify?**
> **THE DEFENDANT:       Yes, sir.**

(Ex. E, p. 144).   The court then confirmed that Mr. Campbell had a previous conviction, and the State intended to inquire about the conviction on cross-examination if he testified (*id.* at p. 145).   He asked Mr. Campbell and his counsel to "listen" to the State's recitation of Mr. Campbell's record of convictions, which included admissible convictions for armed robbery and petit theft (*id.* at pp. 146-147). The court summarized the implications of the convictions:

> **THE COURT:       Mr. Campbell, you understand that if you take the stand, the State will not be allowed to go into those cases, but they will be allowed to ask you whether you've been convicted of a felony offense or a crime involving truth or dishonesty.   And if you answer consistent that you have one felony conviction and one crime involving truth or dishonesty, they will not be allowed to go any further than that. Do you understand that?**
> **THE DEFENDANT: Yes, sir.**

(Ex. E, p. 147).   The court adjourned for lunch and informed Mr. Campbell that he could think about the decision and discuss it with his counsel (*id.* at p. 148).   After lunch, the court advised Mr. Campbell for a second time of his right to testify and asked Mr. Campbell for a decision:

> **THE COURT:       . . .And, Mr. Campbell, before lunch I had asked you whether or not you wished to testify in this matter.  Have you thought about it during lunch?**
> **THE DEFENDANT:       Yes, sir.**
> **THE COURT:       What's your decision on that?**
> **THE DEFENDANT:       I'm not.**
> **THE COURT:       You're not going to testify?**
> **THE DEFENDANT:       No.**

> THE COURT:      You understand, obviously, that you do have the right to testify if you so choose?
>
> THE DEFENDANT:      Yes, sir.
>
> THE COURT:      And you also understand that even if Ms. DeSpain advises you not to testify, you still have an independent right to testify?
>
> THE DEFENDANT:      Yes, sir.
>
> THE COURT:      Okay. So you're making that decision on your own, not based on anything - - nobody's forced you or coerced you not to?
>
> THE DEFENDANT:      Right.

(Ex. E, p. 158).

On the face of the record, Mr. Campbell cannot show his counsel's advice prejudiced him. Even if his counsel had *instructed* him not to testify, the trial court confirmed three times that Mr. Campbell understood he had the right to testify (or not testify), and specifically confirmed that he understood it was his right regardless of Ms. DeSpain's advice. Mr. Campbell confirmed, under oath, that his decision not to testify was his own decision and not the product of force or coercion. His argument that absent his counsel's advice the outcome of his trial would have been different is without merit.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Williams, supra.* Mr. Campbell is not entitled to federal habeas relief on this claim, and the writ should not issue.

2.      <u>Ineffective assistance of counsel for failing to request that the prosecution submit physical proof of burglary by forced entry.</u>

Mr. Campbell's second ground for relief alleges his counsel was deficient for failing to request that the prosecution submit proof of burglary by forced entry (doc. 1, p. 7; doc. 12, ex. O, p. 113). He claims this failure prejudiced him because "without physical proof to substantiate testimony of forced entry, [a] break-in could not have

occurred[,]" and the prosecution did not prove each element of the crime (ex. O, p. 89).

Mr. Campbell supports his claim with conclusions he draws from the trial testimony and evidence.  First, two boys testified they saw Mr. Campbell enter Mr. McCaskill's dwelling by prying open the door with a screwdriver (ex. E, pp. 82, 136).  One boy testified he watched Mr. Campbell from the corner of the neighbor's house (*id.* at 82), while the other boy testified he was across the street laying in the grass (*id.* at 136).  However, the boy who watched from the corner of the neighbor's house first testified he called the second boy over to watch the burglary together (*id.* at 81).  Later, he testified he watched the burglary alone and met the other boy inside the neighbor's house, where they told her what they had seen from different locations (*id.* at 90).  Mr. Campbell concludes their testimony is conflicting because "[t]he boys could not be two places at the same time."  (*Id.* at 88).

Second, he states that Deputy Key testified the door's condition was consistent with forced entry, but photographs taken before trial did not show damage to the door or frame (ex. O, p. 88).  Deputy Key also testified he did not try to locate burglary tools:

> A    During my investigation and trying to talk to the witnesses and stuff and get their statements, I never did go through the house and look for the actual tool, or a tool. And I never did find it on Mr. Campbell.

(Ex. E, p. 106).  Deputy Key further testified the door had three types of locks.  Mr. Campbell assumes the locks would "make it <u>impossible</u> for [him] to gain <u>forced entry</u>. . .without creating extensive damage to the door and jam. . .."  (*Id.* at 89) (emphasis in original).  Mr. Campbell concludes: "Counsel was deficient for failing to demand [the] State provide proof that [the] door and frame had in fact been damaged, or for a receipt to prove that the door [had] in fact been damaged, and been repaired."  (*Id.* at 88).

**State Court Decision**

The Rule 3.850 court found the record conclusively refuted Mr. Campbell's claim (ex. O, p. 136).  As an initial matter, it pointed out that, as a matter of law, forced entry is not required to prove burglary of an occupied dwelling.  (Ex. O, p. 135) (citing Fla. Stat. § 810.02 (2007)).  It also found that Mr. Campbell's counsel stated in her closing argument that the prosecution did not show proof of damage, and the photos shown to the jury were taken only four days before trial (ex. O, p. 135).  It stated: "A trial defense counsel can only hold the State accountable to the law as written and interpreted by the courts and cannot request that the State submit specific evidence in the trial."  (Ex. O, pp. 135-136).  The court also noted that Mr. Campbell's motion did not allege what physical evidence existed that should have been submitted to the jury.  It concluded: "It is obvious from the face of the attached record documents that trial counsel was acting as a reasonably competent trial attorney."

**Federal Review of State Court Decision**

The Rule 3.850 court determined proof of forced entry is not an element of burglary of an occupied dwelling as defined in Section 810.02, Florida Statutes (2007).[9]  The Supreme Court has repeatedly held that a federal habeas court is bound by a state court's interpretation of state law.  *E.g., Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604, 163 L. Ed. 2d 407 (2005) (Ohio transferred intent doctrine); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) (California rules of evidence); *accord Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (Florida rules of evidence).  Therefore, this court defers to the state court's interpretation of state law.

The Rule 3.850 court's supplemental reasons for denying Mr. Campbell's claim, while supported by the record and objectively reasonable, are ultimately

---

[9]  The jury was also instructed on the lesser included offense of trespass as defined in Section 810.08, Florida Statutes (2007).  (*See* ex. E, p. 182).  Forcible entry is not an element of trespass.

unnecessary for federal habeas purposes.  Mr. Campbell cannot show his counsel was ineffective for failing to preserve or argue a meritless claim*.  Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008); *see also Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (counsel was not ineffective for failing to raise a non-meritorious objection); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Nor can Mr. Campbell show he was prejudiced by his counsel's actions; under Florida law the jury could have found Mr. Campbell guilty of burglary of an occupied dwelling without any proof of forced entry.  *Capetta v. State of Florida*, 162 So.2d 309, 310 (Fla. 3d DCA 1964) (an act as slight as pushing open a closed door constitutes "breaking").

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Campbell is not entitled to federal habeas relief on this claim, and the writ should not issue.


3.    **Ineffective assistance of counsel for failing to attack the lack of evidence of intent to commit a crime inside the dwelling.**

Mr. Campbell's final ground for relief asserts his counsel was ineffective for failing to "demand [the] State prove [he] had intent after entering [the] residence to commit a crime by stealing a carton of cigarettes[.]" (doc. 1, p. 9; *see* doc. 12, p. 13). He alleges his counsel was not aware of the elements of burglary (doc. 12, ex. O, p. 89).  He also claims his counsel did not "resort" to a lesser included offense jury instruction even though the prosecution failed to prove intent element of burglary (*id.*).  The information alleged Mr. Campbell entered the residence with the intent to commit "theft and/or another crime."  (Ex. C, p. 23).  At trial, the prosecution

informed the court and counsel it would be proceeding on the theft theory (ex. E, p. 23).  Deputy Key testified Mr. Campbell was found concealing an unopened carton of cigarettes, and Mr. McCaskill told him the carton should have been in his closet (ex. E, pp. 101-102).  In the instant petition and motion for post-conviction relief, Mr. Campbell relies on Deputy Key's testimony on cross-examination that conceded there were other explanations for how the carton of cigarettes was relocated, and Mr. Campbell may have been moving the carton off the chair so he could sit in it (ex. O, p. 90; *see* ex. E, pp. 115-16).  Mr. Campbell states that testimony that he sat on a carton of cigarettes does not prove he intended to steal them (*id.* at 90).  He claims his counsel was ineffective for "failing to present this information to the jury[,]" and concludes that a reasonable probability exists that the verdict would have been different if the jury "had this information to consider" (*id.* at 91).

### State Court Decision

The Rule 3.850 court denied Mr. Campbell's claim, finding that his counsel did attack the prosecution's lack of evidence that he intended to commit a crime in the dwelling in her oral motion for judgment of acquittal (ex. O, p. 136).  Additionally, it referred to the trial court's instructions to the jury on attempt to commit burglary and trespass of a structure (*id.*).  The court concluded the face of the record showed Mr. Campbell's counsel was not ineffective.

### Federal Review of State Court Decision

This court gives deference to the Rule 3.850 court's factual determinations unless the petitioner shows by clear and convincing evidence that the determination is unreasonable.  *Callahan v. Campbell*, 427 F.3d 897, 926 (11th Cir. 2005).  Mr. Campbell falls far short of meeting this standard.

Mr. Campbell's counsel moved for judgment of acquittal based on insufficiency of the evidence (ex. E, p. 142).  She specifically addressed the intent element of burglary:

> **MS. DeSPAIN:** . . .I would further move that the State has not put on enough evidence to state that Mr. Campbell had the intent to commit a crime therein, whether that crime be theft or another crime.
> . . .
> Your Honor, the officer testified very clearly that he never even made any inquiry to Mr. Campbell as to whether or not he had any illegal reason to have the cigarettes where they were. And the only testimony we've heard that would indicate theft was that the cigarettes were in the chair that Mr. Campbell was occupying.

**(Ex. E, pp. 142-43). The trial court denied the motion (*id.*).**

Furthermore, the record shows Mr. Campbell's counsel requested jury instructions for lesser included offenses:

> **THE COURT:** . . ..Guilty of attempted burglary. Do you want that, Ms. DeSpain, as a lesser included?
> **MS. DeSPAIN:** Yes, sir.
> . . .
> **THE COURT:** All right. The third line: "Guilty of trespass, a lesser included offense." Do you want trespass?
> **MS. DeSPAIN:** Yes, sir.

**(Ex. E, pp. 149-150). The trial court instructed the jury on the lesser included offenses of attempted burglary and trespass of a structure (*id.* at 180-83). The court also provided the jury with six copies of the instructions (*id.* at 192).**

The record clearly refutes Mr. Campbell's claims that his counsel did not argue that the prosecution failed to prove the intent element of burglary or request instructions on lesser included offenses. The Rule 3.850 court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Williams, supra*. Mr. Campbell is not entitled to federal habeas relief on this claim, and the writ should not issue.

## CONCLUSION

The undersigned has carefully reviewed the trial transcript, Mr. Campbell's motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, and all submissions in this proceeding.  Mr. Campbell's Grounds One through Three are without merit, and Mr. Campbell is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.     That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Mace Laval Campbell* in the Circuit Court of Walton County, Florida, case no. 07-0801, be DENIED and the clerk be directed to close the file.

2.     That a certificate of appealability be DENIED.


At Pensacola, Florida, this 1st day of September, 2011.



/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**